# STATE OF MICHIGAN

# COURT OF APPEALS

---

CYNTHIA JANICE BOCKART,

      Plaintiff-Appellant,

v

NICHOLAS CHRISTIAN BOCKART,

      Defendant-Appellee.

UNPUBLISHED
March 20, 2018

No. 335833
Lapeer Circuit Court
LC No. 15-049169-DM

---

Before: MURRAY, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's judgment of divorce which was entered following a two-day bench trial in this divorce action. We vacate the portions of the judgment addressing spousal support and the distribution of the marital estate and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff and defendant, both 39 at the time of trial, were married on June 11, 2005, and separated on September 25, 2015. Plaintiff filed for divorce on October 1, 2015. During the marriage, plaintiff was a stay-at-home mother, raising the parties' two young children. Defendant ran a successful business, Romeo Floors, which in the year leading up to the judgment of divorce, experienced a financial downturn and incurred significant alleged debt in the approximate amount of $108,000. Plaintiff testified at trial that throughout the parties' marriage she "helped out" with defendant's business, assisting with tasks such as answering the telephone, helping customers, running errands, and dropping deposits off at the bank. However, plaintiff was not on the payroll of the business. In the three years before trial, plaintiff worked from home part-time doing website maintenance for a charter school, earning $11,000 annually. At trial, plaintiff testified that she was taking steps to find herself a full-time job. At the time of trial, plaintiff was living with the parties' two children in a home that her father had purchased for her, and while the arrangement called for her to pay approximately $750 in rent, plaintiff was not yet in a position to do so.

Following the two-day bench trial, where the key issues were the distribution of the marital estate and the award of spousal support to plaintiff, the trial court entered a judgment of divorce distributing the parties' marital estate and declining to enter an award of spousal support to plaintiff. Notably, aside from a Lexus vehicle that carried significant mileage, which

-1-

plaintiff's father had purchased for her so that she would have a safe vehicle in which to transport the parties' young children,[1] the trial court awarded the bulk of the marital estate to defendant, stating its intention to assist the parties in avoiding bankruptcy. Plaintiff now appeals as of right, challenging both the distribution of the marital estate and the trial court's decision to not award her spousal support.

## A. THE BUSINESS DEBT OF ROMEO FLOORS

At trial, defendant testified that he had followed his father's footsteps and entered the flooring business at a young age, starting to do flooring installation at the age of 21. Defendant further testified that his business, Romeo Floors, had experienced a financial downturn, in part because of significant road construction that took place outside of his business. According to defendant, the business is an S-corporation,[2] and defendant has a 100 percent ownership of the business. In 2015, defendant paid himself $43,216 in income from the business. Defendant's father was diagnosed with cancer in October 2014 and passed away in November 2015. According to defendant, losing his father, and going through the divorce, along with the loss of spending as much time with his children, greatly impacted defendant's ability to work.

Defendant testified that as a matter of course he would pay personal expenses from his business accounts, and that his accountant would separate the personal expenses from business expenses. Once plaintiff filed for divorce, defendant's income and expenses were impacted because he was required to pay all of the bills at the marital home, even though he was not living there as a result of a personal protection order (PPO) that was entered following an incident of alleged domestic violence. Defendant also had to pay plaintiff court-ordered spousal support during the pendency of the lower court proceedings.[3] According to defendant, he also incurred additional expenses, such as paying for clothes for the parties' children for his parenting time

---

[1] Plaintiff testified that during the course of their marriage, while he was under the influence of alcohol, defendant forced her to sign over the title to the vehicle to him, as he was upset that she had let a male friend drive the vehicle. According to plaintiff, defendant suspected her of having an extramarital affair with the male friend. Defendant testified that he borrowed $5,000 from his stepmother, which he still owed at the time of trial, to complete that transaction.

[2] "[A]n S-corporation is a small business which has elected, under 26 USC 1362(a)(1), to be an S corporation for tax purposes. The effect of that election is that the corporation's income and losses pass through to the individual shareholders as if the income and losses belonged to the members of a partnership." *Diez v Davey*, 307 Mich App 366, 379-380; 861 NW2d 323 (2014) (citation and quotation marks omitted). According to the *Diez* Court, "a sole shareholder of an S corporation is, in particular, uniquely situated insofar as he or she possesses a power over corporate funds not enjoyed by an average employee and may, given this power, be especially able to manipulate the distribution of income, or lack thereof, from the corporation." *Id*. at 380.

[3] The trial court's October 13, 2015 order required defendant to pay plaintiff monthly spousal support of $500 and ordered the parties to "maintain the status quo with respect to the payment of the household bills by paying them in the same pattern as they have done so during the course of their marriage."

with them, clothing for himself, preschool fees for the parties' daughter, veterinary expenses for the parties' dog, his attorney fees related to the divorce, $2200 in attorney fees for plaintiff related to the divorce and $1500 for an appraiser to appraise his business. During the pendency of the lower court proceedings, defendant lived with his step-mother, and he testified that he felt he should pay her $500 a month for allowing him to live with her. Defendant also borrowed upwards of $30,000 from his step-mother for his attorney fees in the divorce. According to defendant, he paid all of the expenses that he was required to, "but I put myself in debt because of it." Defendant also testified that because he was paying all of his expenses from the business, he had to take money from his business to cover the expenses.

During trial, defendant introduced as evidence several outstanding invoices for amounts that Romeo Floors owed as business debt to third parties. These included invoices to third-parties for supplies, utilities, insurance, and sub-contracting services. The business also owed outstanding rent in the amount of $18,000. Defendant also produced a promissory note payable to his aunt for a $10,000 loan given to defendant to "keep [Romeo Floors] going." Defendant also stated that Romeo Floors owed the State of Michigan approximately $8,000 for outstanding sales tax. According to defendant, at the time of trial, Romeo Floors was in debt in the amount of $108,000, and he planned to sell the business.

## II. ANALYSIS

Turning first to the award of spousal support, plaintiff asserts that the trial court's decision was inequitable, particularly where its decision was founded on its incorrect assumption that plaintiff should be held liable for debts incurred by defendant's business. We agree.

## A. SPOUSAL SUPPORT

The decision whether to award spousal support to a party is a matter within the trial court's discretion, and this Court will affirm the trial court's ruling unless "firmly convinced that it was inequitable." *Richards v Richards*, 310 Mich App 683, 690; 874 NW2d 704 (2015) (citation and quotation marks omitted). In reviewing a trial court's award of spousal support, we review the trial court's factual findings for clear error. *Berger v Berger*, 277 Mich App 700, 727; 747 NW2d 336 (2008). "If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case." *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012).

The governing statute, MCL 552.23(1) provides, in pertinent part:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

This Court has recognized a number of factors that a trial court ought to consider when it determines whether it should award spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay [spousal support], (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

In its written opinion and order following the two-day bench trial, before addressing spousal support, the trial court addressed defendant's business, and the debts that the business owed. The trial court stated that defendant, "despite whatever corporate form the business was set up under, for all intents and purposes here, is the sole proprietor of Romeo Floors." Recognizing that the business had undergone significant financial losses in the previous year, the trial court had ordered it sold, noting that the "current expenses associated with the business appear to exceed $108,000.00," and that defendant had assumed personal liability for those debts. In ordering that the business be sold, the trial court stated that plaintiff would be held "harmless" for the debts of the business.

Additionally, the trial court, in the context of determining matters of child support not at issue in this appeal, recognized that while running his business in the years leading to the parties' divorce, defendant's income fluctuated between $40,000 and $60,000 annually. The trial court observed that as it had ordered defendant to be held responsible for all household bills during the lower court proceedings, as well as spousal support, defendant had paid these expenses through his business accounts, "giving an appearance of an inflated income." As a result, according to the trial court, defendant did not pay necessary business expenses and loans during the pendency of the lower court proceedings, and the business debts ballooned to $108,000.

The record evidence further reflected that at the time of trial, defendant had one job offer that would pay him $37,000 annually. Plaintiff, on the other hand, made $11,000 annually while working from home. While plaintiff had made $30,000 before the birth of her first child, she had not been part of the work force since 2008, when the parties' first child was born, and the parties' second child was born in 2011. Since that time, plaintiff had assumed primary responsibility for the care and rearing of the two minor children. The trial court imputed $20,000 in income to plaintiff, and $40,000 to defendant.

In declining to award spousal support to plaintiff, the trial court observed that defendant had been ordered to pay plaintiff $500 a month in spousal support during the pendency of the divorce action, as well as $2,200 toward plaintiff's attorney fees, and $1,500 in fees to appraise defendant's business for the purposes of this action. Defendant was also responsible for all vehicle leases, household bills, and the trial court appeared to empathize with defendant having to shoulder such responsibilities when he could not enter the marital home because of the PPO being entered. The trial court also noted that plaintiff has a Bachelor's Degree in Fine Arts from

the University of Michigan, Flint, while defendant has a high school diploma, and that both were in good health in spite of the stress associated with the divorce proceedings. In the trial court's words, "[p]laintiff will certainly have estimated monthly expenses exceeding her monthly anticipated income [following the entry of the divorce judgment,] but *this Court is relieving her of the primary debt responsibilities*. Therefore, this Court orders that no spousal support will be ordered to be paid by either party." (Emphasis added.)

A review of the trial court's written opinion as a whole demonstrates that the trial court's decision to not award any spousal support to plaintiff flowed from its conclusions that (1) plaintiff was partially responsible for the debt of defendant's business, and (2) by not holding her liable for the business debt, plaintiff was receiving what the trial court viewed as a favorable outcome. Under the specific circumstances of this case, where plaintiff, with defendant's agreement, throughout the duration of an 11 year marriage, left the work force to care for the parties' young children while defendant ran his successful business, we disagree with the trial court's conclusion that this decision was equitable. Our conclusion is buttressed by the fact that, in determining that spousal support should not be awarded, the trial court essentially presumed that plaintiff was responsible for the debt of defendant's business, a finding that was apparently pivotal to its analysis. However, the trial court was required, after weighing the credibility of the witnesses who testified at trial, to determine whether the debts of the business were joint liabilities, or instead reserved to "the individual responsibility of one of the parties." *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005). Additionally, "[c]orporations, even when owned by a sole shareholder" are recognized to be "separate entities under the law[.]" *Diez v Davey*, 307 Mich App 366, 381; 861 NW2d 323 (2014).

Our review of the record reflects that the trial court did not undertake a thorough factual inquiry as to the origin of the debts of defendant's business, and who was responsible for their creation. Instead, the trial court generally attributed part of the responsibility for the debts to plaintiff, given defendant's claim at trial that the debts were incurred because he was ordered to maintain the household bills and pay plaintiff spousal support throughout the lower court proceedings. Notably, the trial court did not specifically consider whether these alleged joint debts arose from any responsibility on the part of plaintiff. Where the record reflects that plaintiff played a minimal role, if any, in the running of defendant's business, particularly with regard to its financial affairs, remand is necessary to (1) allow the trial court the opportunity to thoroughly consider and set forth factual findings concerning plaintiff's responsibility, if any, concerning each of the debts leading to the creation of the total alleged business debt of $108,000,[4] and (2) then revisit its determination regarding whether plaintiff should be precluded from an award of spousal support. On remand, in evaluating whether an award of spousal support is appropriate, the trial court is also to consider and render specific detailed factual findings with respect to all of the spousal support factors set forth in *Olson*, 256 Mich App at 631.

---

[4] These business related debts are set forth in defendant's trial brief filed in the lower court file. On remand, the trial court should also make a determination that each invoice is properly charged to and owed by defendant's business, as opposed to unrelated businesses.

## B. THE MARITAL ESTATE

On appeal, plaintiff also challenges the distribution of the marital estate. While we disagree with plaintiff's contentions challenging the trial court's valuation of marital assets, remand is necessary to allow the trial court to reconsider its distribution of the marital estate.

"In deciding issues on appeal involving division of marital property, this Court first reviews the trial court's findings of fact. Findings of fact, such as a trial court's valuations of particular marital assets, will not be reversed unless clearly erroneous." *Butler v Simmons-Butler*, 308 Mich App 195, 207-208; 863 NW2d 677 (2014) (citations omitted). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "If this Court upholds the trial court's findings of fact, it must then decide whether the dispositional ruling was fair and equitable in light of those facts. The trial court's dispositional ruling is discretionary and will be affirmed unless this Court is left with the firm conviction that it was inequitable." *Reed*, 265 Mich App at 150 (citation omitted).

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Berger*, 277 Mich App at 716-717 (citation omitted). "To reach an equitable division, the trial court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health and needs, fault or past misconduct, and any other equitable circumstance." *Butler*, 308 Mich App at 208. "The trial court must consider all relevant factors but not assign disproportionate weight to any one circumstance." *Berger*, 277 Mich App at 717 (citation and quotation marks omitted).

In distributing the marital estate, the trial court awarded plaintiff a Lexus automobile that carried significant mileage, as well as a number of pieces of personal property based on a list of items that plaintiff desired. The marital home was awarded to defendant, including the entire marital portion of the home's equity, which the trial court calculated to be $58,765.91. In so ruling, the trial court required defendant to assume sole responsibility for a lien held by the Internal Revenue Service (IRS) in the amount of $18,649.08.[5] The trial court awarded $25,300 worth of personal property contained in a pole barn located on the property of the marital home to defendant. The trial court also found that most of the parties' guns were purchased by or gifted to defendant, and therefore, it awarded the guns and safe to defendant. Noting that defendant had testified that the business assets of Romeo Floors, including the business's trucks, "would bring in approximately $15,000.00[,]" the trial court "order[ed] the business sold and order[ed] the Defendant to sell the business assets to offset a portion of the business debt and to further assume the balance of the business debt, holding the Plaintiff harmless."

As an initial matter, to the extent that plaintiff challenges the trial court's valuation of defendant's business, the trial court's valuation of $15,000 was grounded in the record evidence, where plaintiff's witness, Joseph Cunningham, an expert in the valuation of businesses, testified

---

[5] On appeal, plaintiff does not contest her liability for this IRS lien.

that the business was worth approximately $16,000. The trial court's valuation of the marital equity in the home was also correct, particularly where plaintiff conceded during trial that the marital equity in the home was approximately $58,000. However, a review of the trial court's ruling reflects that the trial court's distribution of the marital estate in this case was premised on its assumption that plaintiff bore joint responsibility for the debts of defendant's business. For example, at the conclusion of its ruling, the trial court recognized that it was awarding the bulk of the marital estate to defendant, but expressed its apparent concern that defendant had been responsible for providing for plaintiff and the minor children, all while he could not enter the marital home as a result of a PPO entered against him. The trial court also referenced that its decision relieved plaintiff "of the primary debt responsibilities." Again, as we have observed above, the trial court did not undertake a thorough factual inquiry into the nature of the alleged debts of the business, instead presuming that plaintiff bore partial responsibility for these debts, even where she had minimal involvement in defendant's business. Under the circumstances of this case, we are not convinced that the trial court's distribution of the marital estate was equitable. On remand, after undertaking the necessary inquiry into plaintiff's responsibility with respect to the alleged debts of the business, the trial court shall reconsider its disposition of the marital estate to ensure that it is just and equitable in light of all the circumstances.

## III. CONCLUSION

We vacate the portions of the divorce judgment addressing spousal support and the distribution of the marital estate and remand for proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-7-